UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| INTRA AMERICAN METALS, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) No. 1:13-cv-01117-SEB-MJD |
| CERTAIN UNDERWRITERS AT LLOYD'S LONDON, | ) |
| | ) |
| Defendant. | ) |

## ORDER ON PLAINTIFF'S MOTION TO REMAND

This cause is before the Court on Plaintiff Intra American Metals, Inc.'s Motion to Remand to State Court, filed on August 14, 2013 pursuant to 28 U.S.C. § 1447(c). For the reasons set forth below, the Defendant is ORDERED TO SHOW CAUSE by February 14, 2014 why this action should not be remanded to state court, given its failure to establish diversity of citizenship jurisdiction in this Court. If Defendant is unable to establish the complete diversity of citizenship necessary for this Court to exercise jurisdiction over the matter, Plaintiff's Motion to Remand will be granted.

### Factual and Procedural Background

This litigation owes its origins to a contract dispute. Plaintiff Intra American Metals, Inc. ("Intrametco") is an Indiana corporation engaged in the trading of metals. Compl. ¶ 1. Between May and July 2008, Intrametco entered into a total of six sales contracts with Lane Tone International Material, Inc. ("Lane Tone") that called for Intrametco to deliver 95 shipments of non-ferrous metals for a price of $3,123,580. *Id.* at ¶ 4. After Lane Tone failed to pay for thirteen

1

shipments made pursuant to the contract and rejected the 82 remaining shipments, Intrametco sued Lane Tone for breach of contract and anticipatory breach of contract in Hamilton County Superior Court in Indiana. *Id.* at ¶¶ 4–5.[1] On February 22, 2011 and June 21, 2012, the Hamilton County Superior Court entered judgments in favor of Intrametco in amounts totaling $937,566.17. *See* Docket No. 12 at 4.[2] Lane Tone failed to satisfy the judgments. *Id.* at ¶ 16.

At times relevant to that breach of contract action, Lane Tone was insured by a commercial general liability policy; the policy, bearing certificate number OME000038, was issued by the Defendant, Certain Underwriters at Lloyd's of London.[3] Docket No. 12 at 1. On July 9, 2009, an attorney of the law firm Wilson, Elser, Moskowitz, Edelman & Dicker, LLP ("WEMED")—retained by Defendant—appeared as insurance defense counsel in the breach of contract suit on behalf of Lane Tone. Compl. ¶ 6. Lloyd's representatives never issued a "reservation of rights letter," and Lane Tone made several requests in 2009 and 2010 that WEMED engage in a more proactive discovery effort pursuant to its putative obligation to defend Lane Tone in the contract suit. *Id.* at ¶ 7. However, in January 2010 Lloyd's informed Lane Tone that it was revoking its coverage and defense of the action, asserting that Lane Tone's insurance policy did not extend to Lane Tone's alleged breach of contract; WEMED accordingly withdrew as insurance counsel on February 23, 2010. *Id.* at ¶¶ 7–8.

After insurance counsel's withdrawal, Lane Tone filed suit against its insurers at Lloyd's in Hamilton County Superior Court on June 15, 2010, seeking a declaratory judgment that the insurance policy obligated the insurers to defend Lane Tone in the contract suit and to indemnify

---

[1] That case was styled *Intra American Metals, Inc. v. Lane Tone International Material, Inc.*, Cause No. 29D01-0812-PL-1535.
[2] Citations to Docket No. 12 refer to the Defendant's Memorandum in Support of Motion to Dismiss. The motion to dismiss addresses the merits rather than the jurisdictional issue now before us.
[3] As discussed below, "Certain Underwriters at Lloyd's of London" is a group comprising many individuals, but for purposes of simplicity we will refer to it in the singular form in this order.

Lane Tone for any resulting liabilities. *See* Docket No. 12 at 3.[4] On July 20, 2010, the Lloyd's insurers removed that case to our court on the basis of diversity jurisdiction; however, on June 4, 2012, Judge Magnus-Stinson issued an order of remand based on the failure of the Lloyd's insurers to adequately establish complete diversity of citizenship among the parties. *See* Cause No. 1:10-cv-00922-JMS-TAB, Docket No. 52. Because of its interest in that declaratory judgment suit, Intrametco sought, and received, a garnishment order from the court that had entered judgment on its behalf in the contract suit, decreeing that "any proceeds, recoveries, funds or the like that may be become due and payable from [Lloyd's] to [Lane Tone] . . . shall be paid to Intrametco." Compl. ¶ 18. Lane Tone and the Lloyd's insurers subsequently reached a settlement agreement—one that Intrametco believes did not adequately recognize Intrametco's interest in the dispute. *See* Docket No. 12 at 5.

Claiming that "the Settlement Agreement between Lane Tone and Lloyd's does not extinguish Intrametco's rights to enforce the policy in its entirety as the injured party," Intrametco now seeks a declaratory judgment holding as follows: (1) that the insurance policy applies to the underlying contract claims against Lane Tone, (2) that Lloyd's is estopped from asserting that any exclusions in the policy apply to bar coverage of Intrametco's contract claims against Lane Tone, and (3) that Lloyd's is therefore liable to indemnify Intrametco for the full amount which Lane Tone has been adjudged liable to Intrametco for its breach of contract. *See* Compl. ¶¶ 26–28.

---

[4] That case was styled *Lane Tone International Material, Inc. v. Certain Underwriters of Lloyd's, London*, Cause No. 29D02-1006-PL-000763.

## Legal Analysis

### Standard of Review

Plaintiff's motion to remand alleges that we lack subject matter jurisdiction over the matter before us under 28 U.S.C. § 1332 because Defendant has failed to establish that the parties are completely diverse. In a case that has been removed from state court, federal law mandates that, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). Courts therefore have an obligation to inquire into the existence of jurisdiction, whether on the motion of a party or *sua sponte*. *See generally Heinen v. Northrop Grumman Corp.*, 671 F.3d 669 (7th Cir. 2012).

When a party seeks to remove a case to federal court based on diversity jurisdiction, that party bears the burden of establishing the parties' complete diversity of citizenship. *See Doe v. Allied-Signal, Inc.*, 985 F.2d 908, 911 (7th Cir. 1993); *Chase v. Shop 'N Save Warehouse Foods, Inc.*, 110 F.3d 424, 427 (7th Cir. 1997). Federal courts are tribunals of limited jurisdiction; as the United States Supreme Court has repeatedly stated, the diversity jurisdiction of the federal courts over state-law matters is to be strictly construed. *See Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 377 (1978) (citing *Thomson v. Gaskill*, 315 U.S. 442, 446 (1942)). Therefore, any doubt regarding jurisdiction should be resolved in favor of remanding to state court jurisdiction. *See Doe,* 985 F.2d at 911.

### Discussion

This case presents a thorny complication of federal courts' diversity jurisdiction: the plural citizenship of unincorporated business organizations. The jurisdictional challenge is

rendered particularly complex here by the unusual organizational structure of the Defendant insurers, members of the inchoate body known as Lloyd's of London.

**I.**

Federal case law interpreting the diversity statute, 28 U.S.C. § 1332, defines the "citizenship" of business organizations differently depending on their structure. A corporation is treated as a singular entity—a citizen of both its state of incorporation and its principal place of business. *See, e.g., Lincoln Property Co. v. Roche,* 546 U.S. 81, 88–89 (2005). Unincorporated business associations, however, are plural entities, and take the citizenship of each of their members. *Carden v. Arkoma Associates,* 494 U.S. 185, 188 (1990); *Guaranty National Title Co. v. J.E.G. Associates,* 101 F.3d 57, 58 (7th Cir. 1996). This category includes labor unions, joint stock companies, and joint ventures; most relevant to this case, it also includes both general and limited partnerships. *See Indiana Gas Co. v. Home Ins. Co.*, 141 F.3d 314, 316 (7th Cir. 1998).

Lloyd's of London fits only uneasily within this classification scheme. *See generally* Melissa Coulombe Beauchesne, *Lloyd's of London and Diversity Jurisdiction: Analyzing the Citizenship of a Unique Organization*, 5 Roger Williams U. L. Rev. 217 (Fall 1999). Lloyd's is not an insurance "company," but rather a marketplace—a forum for bringing together risks and investors. Lloyd's consists of investors, called "Names," who form unincorporated groups referred to as syndicates. These syndicates underwrite insurance coverage for an insured through agents, called lead underwriters, who act on behalf of the syndicate. Howard M. Tollin and Mark Deckman, *Lloyd's of London and the Problem with Federal Diversity Jurisdiction*, 9 J. Transnat'l L. & Pol'y 289, 291 (Spring 2000); *see also Certain Interested Underwriters at*

*Lloyd's, London, England v. Layne*, 26 F.3d 39, 41–43 (6th Cir. 1994) (explaining the structure of Lloyd's).

The circuit courts have divided in their treatment of Lloyd's for diversity purposes. While it is largely undisputed that Lloyd's falls under the rubric of a partnership rather than a corporation, there is disagreement whether all the "names" in a syndicate are "real parties in interest" and thus must have their individual citizenship taken into account for diversity purposes. *See* Tollin & Deckman, *supra* at 293 (citing Fed. R. Civ. Pro. 17(a)). The Sixth Circuit, on the theory that the lead underwriter of a syndicate is the active agent for the "names" as other passive investors, has held that only the underwriter's citizenship is to be considered. *See Certain Interested Underwriters at Lloyd's, London, England v. Layne*, 26 F.3d 39, 43 (6th Cir. 1994). The Seventh Circuit, however, has taken a different tack, as set forth in its decision in *Indiana Gas Co., Inc. v. Home Ins. Co.* 141 F.3d 314 (7th Cir. 1998). The court observed: "An underwriting syndicate at Lloyd's has the personal-liability characteristics of a general partnership and the management structure of a limited partnership . . . [T]he names are natural persons and sole traders, subscribing to policies of insurance *each for his or her own part* and not one for the other. They are *members* of various syndicates." 141 F.3d at 317 (emphasis original). Because every "name" subscribing to a Lloyd's syndicate bears full liability for the risk—as in a general partnership—the court reasoned that the citizenship of each and every name must be taken into account for purposes of diversity jurisdiction. *Id.*[5]

---

[5] This approach has also been adopted by the Fifth Circuit, *see Royal Ins. Co. of America v. Quinn-L Capital Corp.*, 3 F.3d 877, 882 (5th Cir. 1993), and District Courts in the First and Ninth Circuits, *see Bath Iron Works Corp. v. Certain Member Cos. Of the Inst. of London Underwriters*, 870 F. Supp. 3, 6 (D. Maine 1994) (First Circuit); *Queen Victoria Corp. v. Ins. Specialists of Hawaii,* 711 F. Supp. 553, 554 (D. Haw. 1989) (Ninth Circuit).

## II.

In order to establish our subject-matter jurisdication over this case, Defendant must therefore set forth the citizenship of all "names" subscribed to Syndicate 958[6]—the group of Lloyd's members that issued the policy to Lane Tone. Def.'s Resp. 1.[7] In an effort to comply with the requirements of *Indiana Gas*, Defendant has submitted the Declaration of Graham Bonner, which purports to set forth the citizenship of each of the 1,873 "names" subscribed to Syndicate 958. *See* Docket No. 22, Ex. A. Where "names" are individuals, the report attached to the Bonner Declaration lists the "member country"—and, if the individual is a resident of the United States, the state of residence.[8] *Id.* In many cases, however, the "name" is *itself* a business organization presumably comprising multiple individuals; for these business entity "names," the report lists only their "country of incorporation." *Id.*

It is upon the subject of these "partnerships within partnerships" that the parties join issue. Many of the business entities listed as "names" in the report, for instance, are Limited Liability Partnerships (LLPs). It is well established that LLPs, like general and statutory limited partnerships and Limited Liability Corporations (LLCs), take the citizenship of each constituent partner or "member." *See Handelsman v. Bedford Village Associates Ltd. Partnership,* 213 F.3d 48, 51 (2d Cir. 2000) (citing *Carden,* 494 U.S. at 195–196 (1990)); *see also Cosgrove v. Bartolotta,* 150 F.3d 729, 731 (7th Cir. 1998) (explaining law applicable to LLCs). Plaintiff argues that Defendant's showing is insufficient to establish complete diversity, because it does not divulge the citizenship of the individuals making up the business organizations, such as

---

[6] As explained previously, Lloyd's syndicates are created on an *ad hoc* basis and have no permanent institutional existence apart from the risk or risks they subscribe together to insure.

[7] Defendant asserts that Syndicate 958 subscribed to 100% of the risk in the policy, and that no other syndicates were involved. Plaintiff has not disputed this assertion. *See* Def.'s Resp. 1 (quoting Docket No. 1 at ¶ 7, "Notice of Removal").

[8] The "member country" listed in the report for individuals is apparently drawn from members' mailing addresses. Plaintiff objects that a mailing address does not necessarily capture the "citizenship" of an individual, but we consider this to be a sufficient showing with respect to the individual "names."

LLPs, listed as "names." Pl.'s Reply 2. In Plaintiff's words, "[m]erely stating the place of incorporation and asserting that none of the principal places of business are in Indiana does not satisfy Lloyd's burden. Lloyd's has not set forth information to allow a determination as to the citizenship of each of the business entity names included in the syndicate at issue." *Id.* at 2–3. Defendant retorts that its submissions fully comply with the requirements of *Indiana Gas*. Def.'s Sur-Reply 4.

Defendant is correct to note that *Indiana Gas* did not specifically require the removing party to set forth the names of individuals constituting unincorporated business associations that are themselves Lloyd's "names." Indeed, such a second tier of detail proved unnecessary in *Indiana Gas,* because the disclosures by the defendants in that case at the first tier of detail indicated that an individual "name" was a citizen of Indiana, defeating diversity and requiring remand. *See* 141 F.3d at 317. However, we conclude that, in light of our obligation to construe the diversity jurisdiction of the federal courts strictly, it is consistent with the logic of *Indiana Gas* for us to require Defendant to set forth the citizenship of members of partnerships that constitute "names" within the larger partnership of Syndicate 958.[9]

---

[9] It appears that all the entities listed as "names" in the report attached to the Bonner Declaration are organized in, or subject to the laws of, the following foreign jurisdictions: England and Wales, Scotland, the Isle of Man, the British Virgin Islands, and Bermuda. *See* Docket No. 22, Ex. A. All are members of the British Commonwealth; with the exception of Scotland, which has a "mixed" common-law and civil-law regime, these jurisdictions have inherited the common-law tradition that is the shared legacy of the British Commonwealth and the United States. *See generally* William Tetley, *Mixed Jurisdictions: Common Law v. Civil Law (Codified and Uncodified)*, 60 La. L. Rev. 677 (Spring 2000). In *Carden,* the United States Supreme Court held that: "There could be no doubt . . . that at least common-law entities (and likely all entities beyond the Puerto Rican *sociedad en comandita*) would be treated for purposes of the diversity statute pursuant to . . . "[t]he tradition of the common law," which is "to treat as legal persons only incorporated groups and to assimilate all others to partnerships." *Carden,* 494 U.S. at 190 (citing *Puerto Rico v. Russell & Co.*, 288 U.S. 476 (1933)). According to these principles, we presumptively treat a Commonwealth entity organized as a "limited liability partnership" as having characteristics analogous to the domestic entity of the same name. We welcome the Defendant, in its submission responsive to this Order, to clarify if any of the entities listed as "names" in the report, particularly those organized in the "mixed" jurisdiction of Scotland, should actually be considered as analogous to domestic corporations—and thus possessing single rather than plural citizenship.

Defendant insists that it need not affirmatively "set forth" the citizenship of partners constituting names, but rather merely "advise the court" if an obstacle to diversity exists. Def.'s Sur-Reply 4. This argument understates Defendant's responsibility here, as well as ours. A party seeking removal on the basis of diversity bears the burden of establishing the existence of complete diversity; Seventh Circuit precedent clarifies that this burden must be met by "offer[ing] evidence which proves 'to a reasonable probability that jurisdiction exists.'" *Gould v. Artisoft, Inc.*, 1 F.3d 544, 547 (7th Cir. 1993). As this Court has concluded when addressing the diversity issue raised by Lloyd's of London in the underlying suit between Lane Tone and Defendant, a statement generically asserting that "no member (or name) associated with the syndicates underwriting the risk at issue in this matter is a citizen of Indiana" is insufficient to meet this burden. *See Lane Tone International Material, Inc. v. Certain Underwriters of Lloyd's, London*, Cause No. 29D02-1006-PL-000763, at 1 (S.D. Ind. June 4, 2012). Although Defendant has adequately set forth the citizenship of *individual* names associated with Syndicate 958 here, it has not satisfactorily divulged citizenship information as to the partners comprising business entity "names." *See* Docket No. 22, Ex. A.

Defendant urges that requiring further disclosure of the citizenship information of the "names" is to "ask[] the impossible." Def.'s Sur-Reply 4. We do not doubt but that both the strictures of the federal courts' diversity jurisprudence in general, and the *sui generis* structure of Lloyd's in particular, render complete diversity in a case such as this a difficult objective to achieve. The Supreme Court has acknowledged as much, conceding that, with regard to the citizenship of non-corporate organizations, its decisions "can validly be characterized as technical, precedent-bound, and unresponsive to policy considerations raised by the changing realities of business organization." *Carden,* 494 U.S. at 196. At the same time, however, the

Court reasoned that such rigidity is necessary for faithful construction of the diversity statute in light of the principle that federal jurisdiction must be construed narrowly. *Id.* With respect to the structure of Lloyd's, Defendant is not the first to perceive that the Seventh Circuit's classification of the syndicates' structure gives any party seeking to establish diversity a difficult row to hoe. *See, e.g.,* John M. Sylvester and Roberta D. Anderson, *Is It Still Possible to Litigate Against Lloyd's in Federal Court?*, 34 Tort & Ins. L. J. 1065 (Summer 1999) (noting the practical implications of the decisions of the Seventh Circuit and other federal courts that have reached similar conclusions). We see no reason, however, why the logic of *Indiana Gas* should not extend to the constituents of the "name" organizations at issue here; it is not our role to attempt to bend long-established jurisdictional principles to accommodate the idiosyncratic organizational structure of a particular defendant.

Defendant has submitted, and subsequently amended, a report on the citizenship of Syndicate 958's members. Given its contention that providing more information is "impossible," we presume that it is unable to provide the additional material necessary to meet its burden—namely, the citizenship of partners or members making up the organizational "names" listed in its current amended report. We therefore ORDER Defendant to SHOW CAUSE by February 14, 2014 why this action should not be remanded to state court, given its failure to show that diversity of citizenship exists. Failure to do so will result in this Court remanding this action to state court.

IT IS SO ORDERED.

Date: 02/07/2014

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Jenai Savia Mehra
FROST BROWN TODD LLC
jmehra@fbtlaw.com

Nelson D. Alexander
FROST BROWN TODD LLC
nalexander@fbtlaw.com

Angela Pease Krahulik
ICE MILLER LLP
krahulik@icemiller.com

George A. Gasper
ICE MILLER LLP
george.gasper@icemiller.com

Neal R. Novak
LAW OFFICES OF NEAL R. NOVAK, LTD.
novak@novakjuris.com

Colleen M. Costello
NOVAK LAW OFFICES
costello@novakjuris.com